# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Richard B.,[1]

      Plaintiff,

v.

Frank Bisignano, *Commissioner of Social Security*,

      Defendant.

Case No. 25-cv-928 (SGE)

**ORDER**

This matter is before the Court on the parties' respective briefing addressing the Commissioner's final decision denying benefits. (*See* Pl.'s Br. (Dkt. 14); Def.'s Br. (Dkt. 27); Pl.'s Reply (Dkt. 28).) Plaintiff Richard B. ("Mr. B") argues that the Commissioner of Social Security's denial of an application for disability benefits should be reversed because the Agency's Administrative Law Judge ("ALJ") committed legal error and the resulting decision is not supported by substantial evidence. For the reasons set forth below, the Court concludes that the Commissioner's decision should be remanded for further administrative proceedings as set forth below.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff, it is by his or her first name and last initial only.

1

## I.       Background

The Social Security regulations set forth a sequential method of evaluating disability claims. 20 C.F.R. §§ 404.1520(a). The first step is to determine whether the claimant engages in substantial gainful activity. At the second step, the ALJ determines whether the claimant suffers from a severe impairment—i.e., an impairment that significantly limits the ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c). If not, the claim is denied. If so, at the third step, the ALJ determines whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If the claimant's impairment meets or equals a listed impairment, then the claim will be granted. If not, at the fourth step, the ALJ determines whether the claimant has an impairment which precludes the performance of past relevant work. 20 C.F.R. § 404.1520(e). This includes evaluating the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work on a sustained basis despite limitations from any impairments. If the claimant's impairments do not preclude performance of past relevant work, then the claim will be denied. If the claimant's impairments do preclude performance of past relevant work, then at the fifth step, the ALJ determines whether the claimant's impairments prevent the performance of any other work, considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(f).

Mr. B applied for disability insurance benefits under Title II of the Social Security Act on August 9, 2023. (*See* R. 59.) His initial application was denied, as was the request

2

for reconsideration. (R. 59-65, 90-92.) An audio hearing was held before an ALJ on February 3, 2025, and the ALJ issued a determination that Mr. B was not disabled on February 12, 2025. (R. 11-27.) Mr. B asked the Appeals Council to review the ALJ's decision, and the Appeals Council declined. (R. 1-5.) Mr. B filed the Complaint in this matter on March 12, 2025. (Compl., Dkt. 1.)

## II.    Legal Standard

Federal courts will uphold the Commissioner's denial of a disability claim if substantial evidence supports the ALJ's findings and if the decision is not based on legal error. *See Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). "Legal error may be an error of procedure, . . . the use of erroneous legal standards, or an incorrect application of the law," and courts review whether an ALJ based a decision on legal error de novo. *Collins*, 648 F.3d at 871 (internal citations omitted).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). A court determining whether evidence is substantial must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir.

1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

The substantial-evidence standard is deferential, and courts should not reverse the Commissioner's findings simply because evidence may exist in the administrative record that would support a different conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Instead, a court should reverse only when the ALJ's decision is outside the reasonable "zone of choice" created by the evidentiary record. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). Therefore, the law requires that this Court review the ALJ's factual determinations with deference, neither re-weighing the evidence nor reviewing the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). However, the Court's deference to the ALJ is not absolute. Where an ALJ fails to adequately support their determination, the Court may remand. *See, e.g.*, *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099 at *26 (D. Minn. Jan. 26, 2017) (noting that the ALJ must demonstrate some "logical bridge" between the evidence and their conclusions).

Courts reviewing ALJ decisions must read and consider the decision in its entirety. *See, e.g.*, *Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009) (determining the basis of the ALJ's finding was "apparent from the opinions entirety"). An ALJ is not required to evaluate the medical opinions in any particular section of her opinion *See, e.g.*, *Jones v. Astrue*, 619 F.3d 963, 970 (8th Cir. 2010) (ALJ's narrative explanation in different section of decision can support findings throughout the decision).

4

### III.    ALJ's Decision

The ALJ began his analysis by determining that Mr. B remains insured through December 31, 2026, and has not engaged in substantial gainful activity since May 7, 2021. (R. 13.) The ALJ next determined that Mr. B has the following severe impairments: degenerative disc disease of the lumbar spine with thoracic compression deformity; right ankle trimalleolar fracture, status-post open reduction and internal fixation; obstructive sleep apnea; and mental conditions variously diagnosed as depressive disorder, dysthymic disorder, anxiety disorder, and posttraumatic stress disorder. (R. 13-14.) At step three, the ALJ determined that Mr. B's impairments did not meet or medically equal the criteria of any listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (R. 15-18.)

At step four, the ALJ determined that Mr. B had the RFC to perform medium work as defined by 20 C.F.R. § 404.1567(c) with the following limitations:

> occasionally operate foot controls with the right lower extremity; occasionally push and pull with the right lower extremity; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; no exposure to unprotected heights and moving mechanical parts; carry out simple instructions; deal with occasional changes in a routine work setting; and occasionally interact with supervisors, coworkers, and the public.

(R. 18.) Using this RFC, the ALJ determined that Mr. B was unable to perform any past relevant work. (R. 25-26.) At step five, the ALJ determined that Mr. B could still perform other jobs that exist in significant numbers in the national economy, including a hand packager, a machine packager, and a package sealer machine tender. (R. 26-27.)

## ANALYSIS

Mr. B argues that the ALJ's RFC determination was not supported by substantial evidence. Specifically, Mr. B argues that (1) the ALJ failed to address the supportability and consistency of medical opinions he relied on, and (2) the ALJ's RFC determination is not supported by substantial evidence because the ALJ mischaracterized evidence in the record.

### I.     Supportability and Consistency of Medical Opinions

### A. Regulations require the ALJ to evaluate the supportability and consistency of medical opinions.

An ALJ must consider all medical opinions in the record. 20 C.F.R. § 404.1527(c). The Social Security regulations require the ALJ to explain how persuasive each medical opinion is and to explain the "supportability and consistency" of each opinion. 20 C.F.R. § 404.1520c(a). "ALJs evaluate the persuasiveness of medical opinions by considering [factors including] (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022).

The first two factors of supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how she considered the factors of supportability and consistency in her decision. 20 C.F.R. § 404.1520c(b)(2). "The ALJ's brevity is not reversible error." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021). At

the same time, although an explanation "need not be exhaustive," "boilerplate or blanket statements will not do." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (cleaned up). An ALJ's failure to explain either supportability or consistency is reversible error. *Id.*

Additionally, an ALJ may "accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022). The ALJ is not required to identify each and every scrap of evidence that supports or detracts from the medical opinions, but she must at least set forth reasoning "clear enough to allow for appropriate judicial review." *Grindley*, 9 F.4th at 631; *see also Diane M. W. v. Kijakazi*, Case no. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Minn. Sept. 22, 2022) ("The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed."). The regulations require that the ALJ explain how she considered the supportability and consistency factors in evaluating a psychological expert's administrative medical findings. 20 C.F.R. § 416.920c(b)(2); *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (failure to articulate consistency is a legal error that requires remand); *Michael B. v. Kijakazi*, Case no. 21-cv-1043 (NEB/LIB), 2002 WL 4463901, at *2 (D. Minn. Sept. 26, 2022) (failure to articulate supportability is a legal error that requires remand). The ALJ does not need to use the words "supportability" and "consistency," but "it must be clear" that the ALJ addressed the factors. *Diane M.W.*, 2022 WL 4377731, at *5 (citing *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *8 (D.S.D. July 14, 2022); *Goss v. Kijakazi*, No. 4:21-cv-0663 (LPR/JJV), 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)). An ALJ's failure to articulate how he considered the supportability and consistency factors is legal error requiring remand. *Susan H. v. Kijakazi*,

Case no. 21-cv-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B.*, 2022 WL 4463901, at *2; *Joel M. B. v. Kijakazi*, Case no. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) (citing *Lucus*, 960 F.3d at 1070).

The regulations define supportability and consistency. Although "supportability" and "consistency" are terms of art, the regulations indicate that the words mirror their everyday meaning: supportability means that a prior administrative medical finding will be considered more persuasive the more it is supported by objective medical evidence; consistency means that a prior administrative medical finding will be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. § 416.920c(c)(1), (2).

A reviewing court's inquiry is not whether it disagrees with the ALJ's explanation of the supportability and consistency factors based on the record because that would be an improper reweighing of the evidence. *See Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (citing *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007)). Rather, a court reviews only whether the ALJ explained the required factors, and if so—and even if the reviewing court disagrees with the ALJ's explanation—it must find no legal error. *See, e.g.*, *Berry v. Kijakazi*, Case no. 20-cv-0890 (RLW), 2021 WL 4459699, at *8 (E.D. Mo. Sept. 29, 2021).

**B. ALJ's evaluation of State agency medical consultants' opinions satisfied regulatory obligations.**

Mr. B first argues that the ALJ failed to evaluate the supportability and consistency of the state agency medical consultants' opinions as required by the regulations. The record

8

contained two medical opinions by state agency medical consultants: Dr. Gregory Salmi, M.D., at the initial level, and Dr. Stacy Holberg, D.O., at the reconsideration level. Dr. Gregory Salmi, the initial-level medical consultant, determined that Mr. B was capable of full-time work at a medium exertional level, meaning he could occasionally lift and/or carry up to 50 pounds and frequently lift and/or carry up to 25 pounds, and he could stand, walk, or sit for about 6 hours in an 8-hour workday. (R. 62-63.) He further determined that Mr. B should have no repetitive use of foot controls on with his right foot, but frequent use of foot controls was allowed. (R. 63.) Dr. Salmi further determined that Mr. B could frequently climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. (R. 63.)

The ALJ addressed the supportability of this opinion, noting that Dr. Salmi' s conclusions were "supported with citations and a reasonable explanation." (R. 24.) Dr. Salmi referred to and relied on Mr. B's medical records and noted that Mr. B had transitioned to a CAM boot and taking daily walks a few months after surgery. (R. 63.) The ALJ cited to other evidence supporting Dr. Salmi's conclusion, including that Mr. B demonstrated fluid and active range of motion of his right ankle with no crepitus appreciated in July 2023, and that he demonstrated a normal gait at multiple examinations. (R. 21-22.)

The ALJ also addressed the consistency factor of Dr. Salmi's conclusions, stating that they were "consistent with the overall record, including the overall physical clinical findings and signs, the claimant's courses of and responses to physical treatments, and the claimant's daily and other activities." (R. 24.) The ALJ also noted that Dr. Salmi's

conclusion was "consistent with [Mr. B's] subjective statements about numbness in his right foot and statements in his adult functional reports about medication side effects." (R. 24.) This is sufficient to satisfy the obligations of the regulations. *See Daniels v. Kijakazi*, 617 F. Supp. 3d 180, 188-89 (S.D.N.Y. 2002). The ALJ recited the limitations that Dr. Salmi found and examined the evidence on which he based those findings, ultimately finding that his opinion was supported by the evidence. (R. 19-24.)

The reconsideration-level medical consultant, Dr. Stacy Holberg, D.O., made a similar determination regarding Mr. B's ability to work. (R. 76-77.) Dr. Holberg determined that Mr. B was capable of full-time work at a medium exertional level, meaning he could occasionally lift and/or carry up to 50 pounds and frequently lift and/or carry up to 25 pounds, and he could stand, walk, or sit for about 6 hours in an 8-hour workday. (R. 76.) She further determined that Mr. B could frequently climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. (R. 76.) Dr. Holberg also determined that a minor limitation on overhead reaching was appropriate to address shoulder pain. (R. 76-77.)

Like with Dr. Salmi, the ALJ addressed the supportability of Dr. Holberg's opinion, stating that her conclusions are "also supported with citations and a reasonable explanation." (R. 24.) Dr. Holberg referred to and relied on Mr. B's medical records and noted that Mr. B's IBS-C and osteoporosis are non-severe. (R. 78.) The other evidence that the ALJ cited supporting Dr. Salmi's conclusion also supports Dr. Holberg's conclusion, including that Mr. B demonstrated fluid and active range of motion of his right ankle with

no crepitus appreciated in July 2023, and that he demonstrated a normal gait at multiple examinations. (R. 21-22.)

The ALJ also addressed the consistency factor of Dr. Holberg's conclusions, stating that they were "mostly consistent with the overall record," but noting that the record did not support the need for any overhead reaching restrictions. (R. 24.) As such, the ALJ found Dr. Holberg's conclusions were "mostly consistent" with the record and declined to adopt the overhead reaching limitation. (R. 24.) This satisfies the ALJ's obligations to evaluate the consistency of the medical opinions in the record. *See Daniels*, 617 F. Supp. 3d at 188-89. The ALJ recited the limitations that Dr. Holberg found and examined the evidence on which she based those findings. (R. 25-29.) The ALJ then made her own determinations regarding Mr. B's limitations, and in doing so, she identified evidence in the record that supported and was consistent with his determinations.

Based on the above, the Court concludes that the ALJ evaluated the supportability and consistency of the state agency medical consultants' opinions. Although the experts did not have access to all of the medical records, the ALJ reviewed Mr. B's entire medical file and found that the opinions were supported by and consistent with the record. This satisfies the ALJ's obligations under the regulations.

## II.   Mischaracterized Evidence

Mr. B also argues that the ALJ erred in assessing his subjective complaints and self-reported symptoms in violation of SSR 16-3p by mischaracterizing the evidence in the record. SSR 16-3p requires an ALJ to take into account the claimant's reported symptoms and evaluate the intensity, persistence, and limiting effects of those symptoms when

determining whether a claimant is disabled. 2017 WL 5180304; *see, e.g.*, *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017) ("Part of the RFC determination includes an assessment of the claimant's credibility regarding subjective complaints."). In determining the intensity, persistence, and limiting effects of those symptoms, the ALJ

> examine[s] the entire care record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2017 WL 5180304, at *4. This evaluation includes consideration of "(i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)) (citation omitted); *see also* SSR 16-3p, 2017 WL 5180304, at *7-8.

The ALJ summarized Mr. B's subjective complaints related to his ankle and back pain and concluded that they were not consistent with the objective medical evidence and other evidence in the record. (R. 19-23.) The ALJ noted that despite an alleged onset of disability date of May 2021, Mr. B did not present for an evaluation of low back pain until September 2023 (which he stated began in March 2023); he engaged only in "routine, conservative, and outpatient-only" back-pain treatment during the relevant period; and his overall physical clinical signs have been "fairly minimal." (R. 20.) As for Mr. B's ankle pain, the ALJ found that after his January 2023 surgery and hardware placement, Mr. B had a well-corrected fracture; his ankle was healing without complication; an EMG nerve

conduction study was only "mildly abnormal"; and although he used a cane and crutches, no records indicated they were a medical necessity, and Mr. B had no documented treatments for fall-related injuries. (R. 21). The ALJ also summarized Mr. B's medical appointment notes, noting that by July 2023 Mr. B had fluid and active range of motion of his right ankle, with no crepitus appreciated, no obvious orthopedic abnormalities, and no regularly presenting gait defects. (R. 21-22.) The ALJ also noted that by June 2024, Mr. B had "comfortable" ambulation. (R. 22.)

The ALJ also stated that Mr. B's described daily activities were not strong evidence in favor of finding him disabled because they could not be "objectively verified with any reasonable degree of certainty," and it is difficult to attribute the stated degree of limitation to Mr. B's medical condition "in light of the relatively weak medical evidence and other factors." (R. 23.) The ALJ continued that Mr. B's admitted participation in certain activities is "not nearly limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (R. 23.) The ALJ specifically noted that Mr. B's activities included independently tending to his personal care, walking for up to 10 minutes, preparing meals, doing some housework, caring for pet dogs, reading, and watching television. (R. 23.) The ALJ determined that Mr. B's participation in these activities was sufficient to discount evidence and allegations of disability.

The Court sees at least two problems with this determination. First, the ALJ's evaluation of Mr. B's daily activities is circular. The ALJ determined both that Mr. B's allegations of limitation were incapable of being objectively verified and that Mr. B's stated activities showed that he was not disabled. This dichotomy leaves Mr. B in an

13

impossible position. If he reports that he engages in any activities, the ALJ will use that to show that he is not disabled; but the ALJ also will not believe his reports that his activities are as limited as he reports. The ALJ has him coming and going.

Second, the ALJ's determination that discounted Mr. B's activities of daily living "are not nearly limited to the extent one would expect, given the complaints of disabling symptoms and limitations" implies that Mr. B's activities are equivalent to medium work, which is inconsistent with the ALJ's eventual finding that Mr. B could no longer perform medium work that he performed in the past. And none of the activities that the ALJ identifies demonstrate that he can endure the requirements of medium work, including for example lifting up to 50 pounds or walking up to 6 hours a day. The Eighth Circuit has repeatedly held that "'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'" *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996) (quoting *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995)). To establish disability, Mr. B need not prove that his pain "precludes all productive activity and confines [him] to life in front of the television." *Id.*

Furthermore, the ALJ's recitation of Mr. B's medical records mischaracterizes the record. For instance, the ALJ states Mr. B had comfortable ambulation at a June 2024 appointment (R. 22)—but that description concerned the fit of Mr. B's orthotics, not his unassisted ambulation. (R. 1408.) The ALJ also cited to appointments in September 2023 as showing no gait deficits, but those records do not mention Mr. B's gait whatsoever. (R. 21, 446, 514-15.) And although the ALJ repeatedly states that Mr. B alleges an onset of

disability on May 7, 2021, the records unambiguously show that he alleges his disability began on January 17, 2023. (R. 177.)

Based on the above, the Court cannot conclude that the ALJ's RFC determination is supported by substantial evidence. It is not this Court's role "to reweigh the evidence or review factual record de novo." *Masterson .v Barnhardt*, 363 F.3d 731, 736 (8th Cir. 2004). The ALJ might have had good reasons for discounting Mr. B's reported symptoms based on his medical records, and making this determination is the ALJ's prerogative. Nonetheless, this Court is unable to determine whether there is substantial evidence in the record as a whole to support the ALJ's conclusion when the ALJ has not adequately explained the evidence on which he relied. *See Boettcher*, 652 F.3d at 863; *Scott*, 529 F.3d at 822; *see also Masterson*, 363 F.3d at 736 (courts "must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion"). Accordingly, remand is appropriate.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Mr. B's request for relief (Dkt. 14) be **GRANTED**;

2. The Commissioner's request for relief (Dkt. 27) be **DENIED**; and

3.  This matter be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this order.

Date: March 23, 2026

_s/Shannon G. Elkins_

SHANNON G. ELKINS
United States Magistrate Judge